# Exhibit A

Defendants' [Proposed] Reply to Plaintiff's Responsive Claim Construction Brief

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| A. SCHULMAN, INC., ) | |
| ) | |
| Plaintiff and Counter-Defendant, ) | Case No. 1:15 CV 1760 |
| ) | |
| v. ) | Judge Patricia A. Gaughan |
| ) | |
| POLYONE CORPORATION and ) | |
| POLYONE DESIGNED STRUCTURES ) | |
| AND SOLUTIONS LLC, ) | |
| ) | |
| Defendants and Counter-Plaintiffs. ) | |
| ) | |

**POLYONE CORPORATION'S AND POLYONE DESIGNED STRUCTURES AND SOLUTION LLC'S [PROPOSED] REPLY TO A. SCHULMAN, INC.'S RESPONSIVE CLAIM CONSTRUCTION BRIEF**

I.     INTRODUCTION

PolyOne Corporation and PolyOne Designed Structures and Solution LLC ("PolyOne") respectfully submit this Reply memorandum in opposition to A. Schulman, Inc.'s ("ASI") Responsive Claim Construction Brief Pursuant to L.P.R. 4.4(b) ("ASI Response Brief") (Doc. 68).  This Reply is needed to address new extrinsic evidence and issues raised by ASI.  This new evidence is the General Motors Specification GMW14650 for "Performance Requirements of Exterior Plastic Parts" (Doc. 68-3) ("GMW14650") which was never previously identified for claim construction.

What is most astonishing is that ASI uses this new evidence to support an apparently new gravelometer claim construction.  This new construction is that only "chipping" of the plastic panel should be measured despite its previous proposed construction that also added "cracking and delamination" to the damage measurement.  (Doc. 58, p. 10).  Thus, ASI's Opening Claim Construction Brief called for testing for chipping, cracking, and delamination while ASI's Response Brief only calls for testing chipping.

ASI's Responsive Brief on page 1 says the Gravelometer Standard is "chipping" and "[n]o evidence supports PolyOne's argument that other forms of damage should be included in the measurements."  (Doc. 68, p. 1).  On the same page ASI continues: "GMW14650… demonstrates, along with the patent specification, that the GM Gravelometer Standard tested for 'chipping,' not other forms of damage."  *Id*.  The problem, however, is that both of ASI's constructions are indefinite, and the new evidence, GMW14650, is not consistent with the teachings of the Asserted Patents.

This new evidence should not be allowed other than to show how it has caused confusion of what ASI's proposed claim construction even is.  Therefore, ASI's proposed claim

construction(s) are indefinite. This may also explain why ASI tries to run away from the testimony of Mr. Leggat, the very man it hired to run its tests on the accused products. Mr. Leggat's testimony was not mere opinion, but is real world experience of what happens because the gravelometer testing was undefined in the patent. (Doc. 61-3; Doc. 67-2).

II. **ASI CANNOT ADVANCE NEW ARGUMENTS BASED ON EXTRINSIC EVIDENCE FOR THE FIRST TIME IN ITS RESPONSE BRIEF**

In its Response Brief, ASI relies on new extrinsic evidence—the GMW14650. GMW14650 is extrinsic because it is never identified in the patents. It was only obliquely identified in an experts' rebuttal report with no explanation. It should be disregarded as late since ASI failed to comply with the local patent rules to properly disclose and identify the GMW14650 standard, and most importantly, explain how it applied. That has only been done as attorney argument in ASI's Response Brief.

A. **ASI Never Identified the GMW14650 Specification in its L.P.R. 4.2(b) or (c) Disclosures**

Procedurally, ASI's use of the GMW14650 is late as "[b]oth the letter and the spirit of the Patent Rules require early and complete disclosure of extrinsic evidence relevant to claim construction." *Lodsys, LLC v. Brother Int'l Corp.*, No. 2:11-cv-90-JRG, 2013 WL 6442185 at *2–3 (E.D. Tex. Mar. 12, 2013).[1]

ASI never disclosed the GMW14650 in either its preliminary L.P.R. 4.2(b) or final L.P.R. 4.2(c) claim construction disclosures. Specifically, L.P.R. 4.2(b) states:

> …***each party shall*** also identify all references from the specification or prosecution history that support its preliminary proposed construction and ***designate any supporting extrinsic evidence*** including, without limitation, dictionary definitions, citations to learned treatises and prior art and testimony of all witnesses including expert witnesses.

---

[1] The N.D. Ohio Local Patent Rules are consistent with and were derived from the E.D. Texas and N.D. California Rules.

ASI's L.P.R. 4.2(b) submission did not include the GMW14650 specification – and certainly not the lengthy attorney arguments regarding its applicability – that ASI now first offers in its Response Brief.  (Exh. 1 (ASI's September 12, 2016 Preliminary Proposed Constructions and Citations to the Supporting Evidence)).

> Similarly, L.P.R. 4.2(c) requires parties to submit final claim construction submissions:
>
> Each such "Final Claim Construction" shall also, for each term which any party contends is governed by 35 U.S.C. § 112(6), identify the structure(s), act(s), or material(s) corresponding to that term's function.  The *parties shall also identify the information set forth in L.P.R. 4.2(b)*, as well as any expert testimony the party intends to rely upon *in support of its proposed claim construction*.

ASI did not include GMW14650 in its final claim construction submission either.  (Exh. 2, pp. 5-6 (ASI's Jan 17, 2017 L.P.R. 4.2(c) Final Proposed Constructions)).

Only in retrospect can ASI find a reference to GM14650 in Dr. Bagdachi's Rebuttal Expert Report (which was not even cited to the Court) which only has the conclusion: "Paragraph 3.5.2 of the August 2006 edition of GMW14650 demonstrates that, as of May 5, 2008, GM intended for GM9508P to be a standard for gravelometer testing of 'exterior plastic parts.'"  Yet, ASI still chose not to include GMW14650 in its claim construction disclosures.  Since neither L.P.R. 4.2(b) nor L.P.R. 4.2(c) give ASI freedom to withhold the new extrinsic evidence until its response brief, reference to the GMW14650 specification should be disregarded.  *See TQP Dev., LLC v. Wells Fargo & Co.,* No. 2:12-cv-00061-JRG-RSP, 2013 WL 6247363, at *4 (E. D. Tex. Dec. 2, 2013) (striking new extrinsic dictionary definition attached to plaintiff's reply brief).  *See also Nordic Nats., Inc. v. J.R. Carlson Labs., Inc.*, No. C 07-2385 PJH, 2008 WL 2357312, at *11 (N.D. Cal. June 6, 2008) (striking declaration filed with Defendant's Response Brief because it was "filed in violation of Patent Local Rules 4–2 and 4–3.").

3

### B. The GMW14650 Specification Is Extrinsic Evidence Not Referenced in the Asserted Patents

ASI is now reaching for another extrinsic GM standard to re-construe its gravelometer claim in its Responsive Brief.  "[T]here is a virtually unbounded universe of potential extrinsic evidence of some marginal relevance that could be brought to bear on any claim construction question.  In the course of litigation, each party will naturally choose the pieces of extrinsic evidence most favorable to its cause, leaving the court with the considerable task of filtering the useful extrinsic evidence from the fluff."  *Phillips v. AWH Corp.*, 415 F.3d 1303, 1318–19 (Fed. Cir. 2005).

Yet, this is what ASI is attempting to do.  ASI repeatedly cites to this new specification as evidence that the GM Gravelometer Standard "should be applied to exterior plastic parts" (Doc. 68, p. 8, n. 3) and the gravelometer only tested for 'chipping,' not other forms of damage." (Doc. 68, p. 1).  ASI's new argument "poses the risk that [extrinsic evidence] will be used to change the meaning of claims..." *Phillips*, 415 F.3d at 1319.  *See also Markman v. Westview Instruments*, 52 F.3d 967, 986 (Fed. Cir. 1995)(en banc), *aff'd*, 517 U.S. 370. ("It is not ambiguity in the document that creates the need for extrinsic evidence but rather unfamiliarity of the court with the terminology of the art to which the patent is addressed.").  Because the Asserted Patents do not reference the GMW14650 specification, this extrinsic evidence and related arguments should be disregarded.

### III. ASI's OWN BRIEFS DEMONSTRATE THAT THE GRAVELOMETER LIMITATION IS INDEFINITE

The gravelometer limitation is indefinite because it does not provide the required "reasonable certainty" on the test evaluation criteria or define what type of damage to consider for the evaluation.  *See Nautilus, Inc. v. Biosig Instruments, Inc.*, 134 S. Ct. 2120, 2129, 189 L. Ed. 2d 37 (2014).  The newly cited GMW14650 specification does not fix the gravelometer

4

limitation's indefiniteness problem.  It makes it worse.  ASI's use of the GMW14650 causes at least two significant problems.  First, ASI's gravelometer construction in its Response Brief that relies on GMW14650 is different than its original claim construction, i.e., "only chipping" excludes "cracking and delamination."  Second, GMW14650 is inconsistent with the teachings of the Asserted Patents.  Accordingly, the gravelometer limitation is still indefinite.

      A.      **ASI's Reliance on the GMW14650 Specification Is Inconsistent With its Previous Claim Construction Position and Continues to Render the Claims Indefinite**

ASI's Opening Claim Construction Brief ("ASI's Opening Brief") (Doc. 58) sets forth its proposed construction of the gravelometer limitation that relied on the language of the paint GM9508P standard.  The problem is that neither the patents nor the paint standard itself explained how the GM9508P would apply to the claimed plastics or how a plastic surface with significant damage such as indentation marks or marring passes the gravelometer test.  (Doc. 58, Sec. IV.).

As it did before, ASI again tries to backfill with another extrinsic standard to try to redefine a gravelometer construction.  In relying on GMW14650 specification, however, ASI changes its claim construction.  In its Opening Brief, ASI's gravelometer construction requires passing the "GM9508P standard with no cracking or delamination."  (Doc. 58, p. 10).  Now, in view of GMW14650, ASI changes position and excludes "cracking or delamination."  For example, on Responsive Brief page 12, ASI says "GM9508P unambiguously instructs that only 'chipping' is to be counted."  (Doc. 68, p. 12).  Similarly, on page 7, "the GM Gravelometer measures only damage from 'chipping'" and throughout: "GM9508P measured 'chipping' not other forms of damage."  (Doc. 68, pp. 1, 7, 8, 10 and 14).  ASI identifies the source of this new construction as GMW14650 which "demonstrates, along with the patent specification, that the GM Gravelometer Standard tested for 'chipping,' not other forms of damage."  (Doc. 68, p. 7).

5

The only test for damage in the patent claims is the GM9508P standard.  The claimed test for damage is not GM9508P *plus* other damage.  Put another way, the only place the claim analyzes the damage is with the GM9508P gravelometer test.  But ASI's originally proposed construction sought to read an extra "cracking or delamination" into the GM9508P standard.  Now ASI backpedals to say that the GM standard only covers "'chipping' not other forms of damage."  (Doc. 68, pp. 1, 7, 8, 10 and 14).  This can be seen by comparing ASI's positions:

| Damage Claim Term | ASI's Opening Brief (Doc. 58) | ASI's Response Brief (Doc. 68) |
| --- | --- | --- |
| GM9508P Gravelometer Impact Test (Doc. 58, p. 10) | Chipping, Cracking, and Delamination  (Doc. 58, p. 10) | "only damage from 'chipping'" (Doc. 68, p. 7)<br><br>"'chipping,' and not other types of damage." (Doc. 68, p. 10)<br><br>"GM9508P… measures only 'chipping,' and not other forms of damage."  (Doc. 68, pp. 1, 7, 14)<br><br>"GM9508P unambiguously instructs that only 'chipping' is to be counted."  (Doc. 68, p. 12) |

Just reading ASI's inconsistent briefs proves there is no "reasonable certainty" about the meaning of the gravelometer limitation and the patent claims are indefinite.

> **B.**     **The Gravelometer Limitation Is Indefinite Because GMW14650 Is Inconsistent with the Teachings in the Asserted Patents**

GMW14650 is not in the Asserted Patents.  And by referencing it extrinsically after-the-fact, ASI adds another layer of uncertainty and additional questions of what type of damage must be considered.  Specifically, GMW14650 Section 3.5.2.1 states, "Slight indentation marks caused by impact permissible …."  (Doc. 68-3, p. 4).  This new requirement raises more questions than it answers.  What size "slight indentation mark" is permissible? What size "indentation mark" is not permissible?  It may be "permissible" but should it still be included in

6

the damage measurement. What distinguishes these "indentation marks" from the "chipping" ASI refers to throughout its Opening Brief and Response Brief? GMW14650 provides no guidance. Not even ASI's expert gave an opinion.

GMW14650 also requires other extraordinary measures that are inconsistent with the teachings of the Asserted Patents. For example, the GMW14650 specification modifies the gravelometer test with brand new dynamic testing requirements relating to specific heat aging and temperature cycling. Before conducting any gravelometer test, GM14650 explains that "tests shall be conducted on test pieces … After resistance of material to heat ageing (see paragraph 3.2)." This requires the test to be exposed for 168 ±2 h (7 days) in an air circulating oven operating at either 80°C or 90°C. (Doc. 68-3, pp. 3-4). Similarly, the GMW14650 also states that "[t]ests shall be conducted on test pieces ... After resistance to temperature cycling (see paragraph 3.3). *Id.* Under this requirement, test pieces must be exposed to two temperature and humidity cycles without interruption: 17± 0.5 h at -30 ±3°C; 72 ± 1 h at +80 ± 3°C; 24 ± 1 h at +40 ± 3°C and 93 ± 5% RH (relative humidity); 7 ± 0.5 h at -30 ± 3°C; 24 ± 1 h at +40 ± 3°C and 93 ± 5% RH; 24 ± 1 h at +22 ± 3°C. *Id.*

These GMW14650 gravelometer temperature requirements are not in the Asserted Patents. In fact, the Asserted Patents (as well as ASI's proposed construction) teach the opposite—that gravelometer testing should have a fixed temperature of *at a -30°C. temperature*." (JX1, *passim*)(emphasis added). And, of course, none of ASI's experts provide analysis or opinion on these specific temperature testing requirements. Accordingly, ASI's new extrinsic GM14560 actually emphasizes its inconsistency with the Asserted Patents and the indefiniteness of the gravelometer claim limitation.

7

## IV. CONCLUSION

ASI's reference to new evidence, General Motors specification GMW14650 and the arguments related to that reference, demonstrate that ASI's own construction proposals lack the "reasonable certainty" required by the Supreme Court.

Dated:  March 21, 2017

Respectfully submitted,

/s/  Arne M. Olson
Arne M. Olson (admitted *Pro Hac Vice*)
Robert J. Ross (admitted *Pro Hac Vice*)
Brian R. Michalek (admitted *Pro Hac Vice*)
OLSON & CEPURITIS, LTD
20 N. Wacker Dr., Fl. 36
Chicago, IL 60606
(312) 580-1180
(312) 580-1189 (fax)
aolson@olsonip.com
rross@olsonip.com
bmichalek@olsonip.com

Kip T. Bollin            (0065275)
THOMPSON HINE LLP
3900 Key Center
127 Public Square
Cleveland, OH  44114-1291
(216) 566-5500
(216) 566-5800 (fax)
Kip.Bollin@ThompsonHine.com

Attorneys for Defendants and Counter-Plaintiffs PolyOne Corporation and PolyOne Designed Structures and Solutions LLC

## CERTIFICATE OF SERVICE

      I hereby certify that a copy of the forgoing document was served on March 21, 2017 upon the following counsel of record in the manner listed:

<u>VIA ECF</u>
Mark Skakun, Esq.
Buckingham, Doolittle & Burroughs, LLC
4518 Fulton Drive NW, Suite 200
Canton, OH 44735-5548
mskakun@bdblaw.com

Eric C. Cohen, Esq.
Mark H. Remus, Esq.
Oluwafemi L. Masha, Esq.
Jon H. Beaupre, Esq.
BRINKS GILSON & LIONE
NBC Tower - Suite 3600
455 N. Cityfront Plaza Drive
Chicago, Illinois 60611
eccohen@brinksgilson.com
mremus@brinksgilson.com
omasha@brinksgilson.com
jbeaupre@brinksgilson.com

                /s/ Arne M. Olson
One of the Attorneys for Defendants and
Counter-Plaintiffs POLYONE CORPORATION
and POLYONE DESIGNED STRUCTURES AND
SOLUTIONS LLC